```
              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF INDIANA
                   SOUTH BEND DIVISION
```

DEPUY ORTHOPAEDICS, INC.,     )
                              )
          Plaintiff,          )
                              )
     v.                       )    No. 3:12-CV-299
                              )
ORTHOPAEDIC HOSPITAL,         )
                              )
          Defendant.          )

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Orthopaedic Hospital ("Hospital") on August 6, 2012. For the reasons set forth below, the motion is **DENIED.**

BACKGROUND

Plaintiff DePuy Orthopaedics, Inc. ("DePuy") makes orthopedic devices. In 1999 it entered into a license agreement with Defendant Hospital, a hospital in Los Angeles, which provided that DePuy would pay royalties to the Hospital for certain patent rights. Earlier this year DePuy reviewed the agreement and concluded that it had expired in 2006. When it contacted the Hospital about the expiration of the agreement,

however, the Hospital disputed DePuy's conclusion and claimed that the agreement remained in full effect. DePuy therefore initiated this suit, pursuant to the Declaratory Judgment Act, seeking a judicial declaration that the agreement had expired in 2006 and had not been breached.

The Hospital has now moved to dismiss the suit on the grounds that there is no subject-matter jurisdiction here because there is no actual dispute sufficient to invoke the Declaratory Judgment Act. The motion is fully briefed and ripe for adjudication.

DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) governs dismissal for lack of subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). When considering a motion to dismiss under Rule 12(b)(1), the court must accept all of the plaintiff's well-pled factual allegations as true and all reasonable inferences derived from those allegations must be drawn in the plaintiff's favor. *United Transp. Union v. Gateway Western R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). However, the court may also look beyond

the complaint and review any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. *Id*. The facts recounted here are derived from DePuy's Complaint and the correspondences between the parties cited in the briefing on the motion to dismiss.

DePuy designs and manufactures orthopedics products. [DE 1 at 2.] DePuy and the Hospital began their work together in 1999 when they entered into a research agreement whereby the Hospital provided research and development services to DePuy to improve the wear of polyethylene bearings on DePuy's products. [DE 1 at 2-3.] The two also entered into the license agreement, which addressed the patent rights that might emerge from the research agreement. [DE 1 at 3.] The license agreement, by its terms, "expire[d] on the later of 7 years from the Effective Date or the expiration of the last applicable Patent." [DE 1 at 4-5.] The effective date of the license agreement was March 1, 1999. [DE 1 at 5.] Since there were no patents between the parties covered under the agreement as of March 1, 2006, DePuy alleges that the agreement terminated on that date. [DE 1 at 5.]

On February 16, 2012, DePuy, after conducting a review of its contract files, informed the Hospital via letter that the license agreement between them had expired on March 1, 2006. [DE

1 at 5.]   Dr. Harry McKellop, the Hospital's Vice President, replied in a letter dated March 27, 2012, which rejected DePuy's claim that the agreement had expired and indicated that DePuy could not continue to market and sell products based on the Hospital's technology without paying the required royalties.  [DE 1 at 5.]   Referring specifically to a particular technology that was allegedly "invented by Orthopaedic Hospital under [the] Research Agreement," Dr. McKellop wrote:

> The notion that DePuy can send us a letter announcing that its obligations to Orthopaedic Hospital ended six years ago and therefore can now disregard Orthopaedic Hospital's ownership of the 110 technology, and market and sell products based on the 110 technology without paying the agreed royalties to Orthopaedic Hospital, simply does not fly. . . . The bottom line is that Orthopaedic Hospital licensed the 110 technology to DePuy and DePuy is obligated to pay royalties on it and otherwise perform its duties under the Agreement.

[DE 16-2 at 3-4.]   Dr. McKellop further stated that Depuy's position was "contrary to the text of the [license] Agreement and DePuy's consistent conduct for the past six years," asked that DePuy "[p]lease reconsider this matter immediately," and also raised the potential that it might be necessary to seek legal action:  "We can provide additional chapter and verse under our Agreement but we hope that is not necessary. … It would be the height of folly to turn this matter over to the lawyers."  [DE

16-2 at 3-4.]

DePuy promptly responded with a March 29, 2012, letter stating that it was in receipt of Dr. McKellop's letter and that it would review it and "respond in good time." [DE 16-3 at 2.] Without yet receiving a response, Dr. McKellop sent an April 4, 2012, letter stating that he was "confident that, once you have reviewed the relevant text, you will agree that the Patent Rights and License Agreement and its companion Research Agreement remain in full effect" and that he hoped to be able to state to the Hospital's Board of Directors that the matter had "been satisfactorily resolved without the need for legal remedies." [DE 16-4 at 3.] DePuy promptly responded once again in an April 10, 2012, letter that it was continuing to review the matter and would respond when its review was complete. [DE 16-5 at 2]. Dr. McKellop then sent an April 20, 2012, letter again asking about the status of DePuy's review; DePuy did not respond to this letter. [DE 16-6 at 3.]

Next, in June of 2012, the parties exchanged a series of emails about the issue. On June 5, 2012, Dr. McKellop emailed DePuy's President, Andrew Ekdahl, asking about the status of the matter, suggesting a conference call between the parties, and stating that he was hoping to tell his Board of Directors that

"we have resolved this disagreement, without the need for formal legal action that would constitute an unnecessary expense for us and for DePuy." [DE 16-7 at 3-4.] Ekdahl responded in an email the next day: "I recommend that we have our attorney's speak to one another." [DE 16-7 at 3.] Later that week, the parties exchanged the information about their respective attorneys. On the Monday of the following week, DePuy filed this lawsuit for declaratory judgment. [DE 1.] When the parties' lawyers spoke on the telephone the next day, DePuy's attorney informed the Hospital's attorney about the suit and emailed him a courtesy copy of the Complaint. [DE 21 at 1-2.]

The Hospital now argues in its motion to dismiss DuPuy's declaratory judgment action that this Court lacks subject-matter jurisdiction because no case or controversy existed between it and DePuy at the time the Complaint was filed. According to the Hospital, there was not an imminent threat of litigation. The Hospital also asserts that, even if there was an imminent threat of litigation, this Court should refuse to accept jurisdiction because DePuy used misleading tactics to ensure it obtained its venue of choice.

Since the filing of the instant motion, the Hospital has filed a separate legal action against DePuy in the Central

6

District of California.  That action also seeks a declaratory judgment, but raises additional claims against DePuy too.  *See* DE 23-1 *Orthopaedic Hospital v. DePuy Orthopaedics, Inc.*, Case No. CV12-11004 ODW (PLAx)(C.D. Cal. Dec. 28, 2012).  The Hospital has also filed a motion to transfer this case to the Central District of California. [DE 28].  That motion will be addressed in a separate order; at the moment, this Court limits its inquiry to subject matter jurisdiction.

Hospital's Motion

The Declaratory Judgment Act affords relief to parties from uncertainty and insecurity with respect to their legal relations. *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994).  As the Seventh Circuit has unequivocally stated:  "[A] party may seek a declaratory judgment to determine whether a particular contract term is binding and need not risk breaching the contract and await a suit." *Johnson v. McCuskey*, 72 Fed. App'x. 475, 477 (7th Cir. 2003).

In determining if an action for declaratory relief can be heard, this Court looks to see if "a declaratory judgment will settle the particular controversy and clarify the legal relations in issue." *Nucor Corp.*, 28 F.3d at 579.  And to determine if

7

there is a sufficient controversy between the parties to invoke the Declaratory Judgment Act, this Court looks at "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

The Hospital argues that at the time DePuy filed its Complaint it could not meet this standard because there was no immediate and real controversy. This argument is a stretch. The Hospital's multiple responses to DePuy's initial letter were consistent and unequivocal: it disagreed with DePuy's interpretation of the license agreement, stated that DePuy needed to continue to pay royalties pursuant to that agreement, and indicated that legal action could be necessary to sort out the differing interpretations. In the face of this response, DePuy was perfectly justified in filing this suit and seeking a definitive judicial determination as to the interpretation and enforceability of the license agreement.

The Court, in *MedImmune*, summarized the central question at issue in that case:

> Respondents claim a right to royalties under the licensing agreement. Petitioner asserts that no

> royalties are owing because the Cabilly II patent is invalid and not infringed; and alleges (without contradiction) a threat by respondents to enjoin sales if royalties are not forthcoming. The factual and legal dimensions of the dispute are well defined and, but for petitioner's continuing to make royalty payments, nothing about the dispute would render it unfit for judicial resolution. [However,] the continuation of royalty payments makes what would otherwise be an imminent threat at least remote, if not nonexistent. As long as those payments are made, there is no risk that respondents will seek to enjoin petitioner's sales. Petitioner's own acts, in other words, eliminate the imminent threat of harm. The question before us is whether this causes the dispute no longer to be a case or controversy within the meaning of Article III.

*Id.* at 128. The Court went on to definitively answer the question it posed: the dispute was fit for judicial resolution under the Declaratory Judgment Act, and thus "the dismissal of this action for lack of subject-matter jurisdiction" was in error. *Id.* at 137.

The same is true here. The Hospital has claimed "a right to royalties under the licensing agreement." DePuy "asserts that no royalties are owing" because the agreement expired. The "factual and legal dimensions of the dispute are well defined" and are fit "for judicial resolution." Therefore, a controversy sufficient to invoke the Declaratory Judgment Act exists and this Court has subject-matter jurisdiction over the case.

The fact that this case involves patents seems to have

unnecessarily confused things in the parties' briefing. There is a whole species of case law regarding the Declaratory Judgment Act's application to disputes over patent infringement (of which *MedImmune* is an important new member), which makes sense since the constant threat of litigation in the patent world is somewhat unique.[1] But this case is not really a dispute over the validity and enforceability of various patents – it is a contractual dispute that happens to involve patents. And the law regarding the Declaratory Judgment Act's application to contractual disputes is even more straightforward:

> In the context of disputes between parties to a contract, the declaratory judgment remedy "is intended

---

[1] Indeed, the potential headaches particular to patent litigation appear to have been one of the central motivations for the Declaratory Judgment Act in the first place, as aptly summarized by one of the Act's supporters during Senate hearings:

> I assert that I have a right to use a certain patent. You claim that you have a patent. What am I going to do about it? There is no way that I can litigate my right, which I claim, to use that device, except by going ahead and using it, and you [the patent holder] can sit back as long as you please and let me run up just as high a bill of damages as you wish to have me run up, and then you may sue me for the damages, and I am ruined, having acted all the time in good faith and on my best judgment, but having no way in the world to find out whether I had a right to use that device or not.

Hearings on H.R. 5623 Before a Subcomm. of the Senate Comm. on the Judiciary, 70th Cong. 35 (1928)(statement of E.R. Sunderland).

> to provide a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of a contractual duty." *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989). If there is "a real, substantial, and existing controversy .... a party to a contract is not compelled to wait until he has committed an act which the other party asserts will constitute a breach." *Keener Oil & Gas Co. v. Consol. Gas Utils. Corp.*, 190 F.2d 985, 989 (10th Cir. 1951). In these situations, relevant Article III considerations include whether the contractual dispute is real, in the sense that it is not factually hypothetical; whether it can be immediately resolved by a judicial declaration of the parties' contractual rights and duties; and whether "the declaration of rights is a bona fide necessity for the natural defendant/declaratory judgment plaintiff to carry on with its business." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002); *cf. MedImmune*, 549 U.S. at 132, 127 S.Ct. 764 ("actual or threatened serious injury to business or employment by a private party" is coercive).

*Maytag Corp. v. International Union, United Auto., Aerospace & Agricultural Implement Workers of America*, 687 F.3d 1076 (8th Cir. 2012).

All of these factors have been satisfied here: The dispute here is real, not hypothetical; it can be resolved by judicial determination; and it is a bone fide threat of injury to DePuy's business (*i.e.*, DePuy needs to know whether it has to continue to pay royalties pursuant to the agreement). *See also Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010) (district court abused its discretion by staying a declaratory judgment action that would have resolved the parties'

"contractual relations"); *Johnson*, 72 Fed. App'x. at 477 ("[A] party may seek a declaratory judgment to determine whether a particular contract term is binding and need not risk breaching the contract and await a suit."); *Northland Ins. Co. v. Gray*, 240 F. Supp. 2d 846, 850 (N. D. Ind. 2003) (denying a motion to dismiss alleging that there was no actual controversy for a declaratory judgment and finding it had the power to determine the contractual rights of the parties).

The Hospital also argues that there is no immediate controversy because it repeatedly made statements to DePuy that it "expressed a strong preference against litigation. And what did not happen was the Hospital threatening suit, much less filing one. On the contrary, the Hospital repeatedly told DePuy that it did ***not*** want to litigate." [DE 22 at 6.] This argument is hard to take seriously. One who repeatedly says that he hopes he does not have to call in his attorney to litigate a dispute clearly raises the tacit threat that litigation is indeed possible. DePuy was entirely justified, in the face of these statements, to believe there was a substantial dispute that could result in litigation over the interpretation of the licensing agreement and to opt to take the preemptive step of filing a declaratory judgment action.

Subject-matter jurisdiction thus exists here.  Moreover, at this juncture, this Court sees no persuasive reason why, as the Hospital urges, the Court should exercise its discretion to decline jurisdiction.  The Hospital has filed a motion to transfer pursuant to 28 U.S.C. § 1404(b), and arguments relative to the proper forum, including the Hospital's allegation that DePuy brought this suit in bad faith, will be addressed by way of a separate order on the motion to transfer.  This Court finds that there is a substantial controversy between the parties and therefore denies the Hospital's motion to dismiss.

CONCLUSION

For the foregoing reasons, the Hospital's Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 14] is **DENIED**.

**DATED: February 22, 2013**              /s/RUDY LOZANO, Judge
                                          **United States District Court**