# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| DEPUY ORTHOPAEDICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:12-cv-299-JVB-MGG |
| | ) | |
| ORTHOPAEDIC HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On August 12, 2016, Plaintiff, DePuy Orthopaedics, Inc. ("DePuy") filed its Motion for Reconsideration of Portions of the Court's Order of August 1, 2016. Defendant, Orthopaedic Hospital ("the Hospital"), filed its response in opposition on August 29, 2016. DePuy's motion became ripe on September 8, 2016, when it filed a reply brief.

On September 29, 2016, the Court held a status conference attended by counsel for both parties at which all then pending nondispositive matters, including the instant motion for reconsideration, were discussed. From the bench, the Court first ordered that its order dated August 1, 2016, be unsealed. [Doc. No. 213]. In addition, the Court granted DePuy's uncontested motion to seal the instant motion for reconsideration. [Doc. No. 215]. The Court then heard argument from counsel for both parties on DePuy's motion for reconsideration. Upon review of the briefs and counsel's oral argument related to the instant motion as well as the record as available to the Court at the time of its order dated August 1, 2016, the Court now denies DePuy's motion for the reasons discussed below.

## I. RELEVANT BACKGROUND

On August 1, 2016, this Court issued an order granting in part and denying in part the Hospital's motion to compel. Of import here, the Court ordered "DePuy to provide complete responses to the Hospital's request for jointly privileged documents and testimony related to the prosecution of the 110 Patent Family applications by **August 15, 2016**." [Doc. No. 213 at 18]. The Court based its order on its conclusion that "Section 6.1 of the PRLA established the mutual consent necessary to make the Hospital and DePuy joint clients on the prosecution of the 110 Patent Family . . . ." [*Id.* at 17]. The heart of DePuy's argument on this issue had been that DePuy's in-house counsel had not consented to represent the Hospital in the prosecution of the patents, which precluded application of the joint client doctrine such that DePuy's internal communications with its in-house counsel related to the prosecution of the 110 Family patent applications were privileged and undiscoverable even as to the Hospital. DePuy acknowledged that it shared a common interest with the Hospital, but rejected the Hospital's claim that DePuy's in-house counsel jointly represented both parties.

Alleging errors of law and fact in the Court's order, DePuy promptly filed a motion on August 8, 2016, to stay production of its allegedly privileged documents pending resolution of its anticipated motion for reconsideration. On August 12, 2016, as promised, DePuy filed the instant motion for reconsideration. Through its motion, DePuy challenges the Court's conclusions of fact and law on the effect of Section 6.1 of the parties' Patent Rights and Licensing Agreement ("PRLA") on the relationship between DePuy's in-house counsel and the Hospital. Specifically, DePuy disputes the Court's conclusion that "the PRLA dictated that both the Hospital and DePuy were to be represented by the counsel selected by DePuy and approved

2

by the Hospital for purposes related to the 110 Patent Family." [Doc. No. 213 at 9]. In addition, DePuy contends that the Court incorrectly concluded that DePuy's in-house counsel were the lawyers selected by the Hospital and approved by DePuy in compliance with Section 6.1 of the PRLA. [*Id.* at 10–11]. DePuy thus asks the Court to grants its motion for reconsideration to correct the alleged errors of fact and law so that DePuy's communications with its in-house counsel are protected from disclosure in keeping with the boundaries of the attorney-client privilege.

On September 6, 2016, the Court stayed its order dated August 1, 2016, pending resolution of DePuy's instant motion and scheduled the September 29, 2016, status conference. [Doc. No. 228 at 3]. Having reviewed the parties' written and oral arguments, the Court now addresses DePuy's motion for reconsideration.

## II.  ANALYSIS

The Seventh Circuit has repeatedly held that motions for reconsideration serve limited functions, including correcting manifest errors of law or fact or presenting newly discovered evidence. *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted). Simply put, motions for reconsideration are not to be used to advance arguments that the Court has already addressed and decided. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *Stodola v. Finley & Co., Inc.*, No. 2:05-CV-464-PRC, 2008 WL 3992237, at *5 (N.D. Ind. Aug. 21, 2008). However, "[a] motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension."

*Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (internal quotation and citation omitted).

> A. **Misidentification of DePuy's In-House Counsel as Section 6.1 Designated Prosecution Counsel**

With additional clarification from the parties in their written briefs and oral argument regarding the instant motion for reconsideration, the Court confirms that, by assuming that DePuy's in-house counsel constituted the designated prosecution counsel under Section 6.1 of the PRLA, a factual error was included in its previous order. In fact, evidence shows that DePuy complied with its obligations under Section 6.1 to pay the legal bills of the legal counsel it selected, with the Hospital's approval, to prosecute the 110 Family patent applications. Specifically, DePuy paid both Wean Khing Wong ("Wong") and the O'Melveny & Myers law firm ("O'Melveny") for their efforts in prosecuting 110 Family patent applications before the Patent and Trademark Office ("PTO"). Moreover, the parties agree that Wong and O'Melveny were the Section 6.1 designated prosecution counsel, not DePuy's in-house counsel as the Court had concluded in its previous order.

Likewise, DePuy's rejection of the Court's conclusion that Section 6.1 of the PRLA "dictated" that the designated prosecution counsel would jointly represent both the Hospital and DePuy may be appropriate. Indeed, neither party raised Section 6.1 as a direct source of consent to joint representation in its arguments to the Court related to the Hospital's original motion to compel. Nevertheless, neither the factual error nor the erroneous finding alter the legal conclusion that DePuy's in-house counsel jointly represented both the Hospital and DePuy in the prosecution of the 110 Family patent applications.

### B. Joint Representation by DePuy's In-House Counsel

With these errors corrected, the Court returns to the critical question, posed originally in the Hospital's motion to compel, of whether DePuy's in-house counsel jointly represented DePuy and the Hospital in the prosecution of the 110 Family patent applications. DePuy continues to argue that its in-house counsel never consented to represent the Hospital and that without such consent, a joint attorney-client relationship never existed. Even without relying upon Section 6.1 to establish joint representation, the Court finds otherwise.

As condensed from the Court's previous order, "[w]hen the same attorney represents the interests of two or more entities on the same matter, those represented are viewed as joint clients for purposes of privilege." *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996). Communications among joint clients and their shared attorneys who are allied in a common legal cause are privileged from disclosure as to those outside their group but are not privileged in a subsequent controversy between the two joint clients. *Id.*; *see also Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 855 (7th Cir. 1974). Indeed, any privilege as to attorney-client communications related to a common interest between joint clients is waived because "the policy of encouraging confidential communications between a lawyer and his or her clients would not be advanced by protecting those communications from disclosure after two or more of those clients have sued each other over a matter falling within the scope of the attorney's representation." *In re Napster Inc. Copyright Litig.*, Civ. Nos. C MDL-00-1369, 04-1351, 04-1671, 04-2121, 2005 WL 6569723, at *4 (N.D. Cal. Apr. 12, 2005).

Therefore, the threshold question when determining whether the joint client doctrine applies is whether the same attorney represented both parties in their common interest. *See*

*Shukh v. Seagate Tech., LLC*, 872 F. Supp. 2d 851, 855–56 (D. Minn. 2012). "In determining whether parties intended to create a joint client relationship, courts look to how the parties interact with the joint attorneys and with one another." *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 886 F. Supp. 2d 466, 479 (D. Del. 2012), *aff'd sub nom. Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. CV 07-127-LPS-MPT, 2014 WL 545440 (D. Del. Feb. 7, 2014). An implied attorney-client relationship can be shown by evidence of a person seeking legal advice or assistance from an attorney and evidence of an attorney giving the desired advice or assistance. *In re Anonymous*, 655 N.E.2d 67, 70 (Ind. 1995).

Nevertheless, "a[n attorney-client] relationship exists 'only after both attorney and client have consented to its formation.'" *In re Anonymous*, 655 N.E.2d 67, 70 (Ind. 1995) (quoting *Hacker v. Holland*, 570 N.E.2d 951, 955 (Ind. Ct. App. 1991)). The consent can be implied through evidence of both the attorney's and the putative client's mutual consent to form an attorney-client relationship. *Id.* As the Court explicitly noted in its previous order, evidence of such mutual consent can include "(1) the putative client's disclosure of documents related to the legal matter at hand, (2) more than one discussion between the putative client and the lawyer about the legal matter at hand, (3) the lawyer's advice to the putative client on matters within his professional competence, including assessment of the case's potential value, (4) the putative client's belief that the lawyer was acting as his attorney, (5) discussion between the putative client and the lawyer regarding a possible contingency fee arrangement, (6) the law firm's opening of a client file with notations of representation, and (7) the lawyer's placement of a billing slip into the client file even though the client was never billed." Doc. No. 213 at 8 (citing *In re Anonymous*, 655 N.E.2d at 69–70).

The Hospital relies heavily on *In re Anonymous* to support its argument that an attorney-client relationship was implied through a combination of the conduct of both the Hospital and DePuy's in-house counsel. Specifically, the Hospital references testimony from both the inventor, Harry McKellop, and DePuy's in-house counsel, Blossom Loo, to affirm that documents produced in discovery show that the Hospital regularly sought advice from DePuy's in-house counsel on issues related to patent prosecution, such as claim scope, office action strategy, and selection of outside counsel. [Doc. Nos. 178-1 to -7; 178-9 to -11; 191-1 to -5; 191-7 to -8].

Additionally, DePuy concedes confidential information was exchanged between the Hospital and its in-house counsel. Yet in the face of these extensive communications, some of which demonstrate that DePuy's in-house counsel was providing direction on prosecution strategy to Wong and O'Melveny, DePuy's in-house counsel, Blossom Loo, testified that she never consented and had no intention of forming an attorney-client relationship with the Hospital. Loo's protestations are not persuasive, however, given the conduct established by the totality of the evidence.

While this case presents no analogues for some of the facts surrounding the holding of implied consent in *In re Anonymous*, the conduct of DePuy's in-house counsel and the Hospital, as demonstrated by the documents and testimony cited above, mirror key factors set forth by the court in *In re Anonymous*. First, the Hospital disclosed confidential information regarding the patent prosecution to DePuy's in-house counsel. Second, DePuy's in-house counsel had regular multiple discussions with the Hospital's inventors as well as prosecution counsel, Wong and O'Melveny, about the parties' common interest in the prosecution of the 110 Patent Family.

7

Third, DePuy's in-house counsel provided direction to prosecution counsel regarding the claim scope, prior art, and strategies for office actions. Fourth, DePuy's in-house counsel arranged meetings with prosecution counsel, DePuy employees and the inventors to discuss and prepare responses to the PTO and at least one international patent office. Fifth, DePuy's in-house counsel participated in the selection of Wong's replacement as prosecution counsel by researching prospective lawyers and commenting on candidate qualifications based on both DePuy's and the Hospital's interests in the 110 Patent Family. And lastly, the Hospital vociferously contends that it believed that DePuy's in-house counsel was acting on its behalf.

Of course, there is no evidence of any discussion of any fee arrangement, any Hospital client file in the offices of DePuy's in-house counsel, or any billing from DePuy's in-house counsel to the Hospital. Nevertheless, the evidence shows that DePuy's in-house counsel was actively involved with the Hospital and the prosecution counsel in the prosecution of the 110 Family patent applications. Moreover, the evidence does not show that DePuy's in-house counsel intentionally avoided advising the Hospital or provided any kind of disclaimer about representation when answering the Hospital's questions with legal information of consequence regarding the patent prosecution. Through such conduct, DePuy's in-house counsel impliedly consented to representing the Hospital in addition to DePuy on the matter of prosecuting the 110 Family patent applications.

Notwithstanding the errors contained in the Court's prior Order, the Court FINDS that mutual consent still exists such that the joint client doctrine applies and any of DePuy's and the Hospital's communications with shared counsel (i.e., DePuy's in-house counsel) are only privileged to the outside world, but are not privileged between DePuy and the Hospital.

8

Therefore, DePuy's internal communications related to the prosecution of the 110 Family patents remains discoverable.

III. CONCLUSION

For the reasons stated above, the Court acknowledges and corrects the errors incorporated into its order dated August 1, 2016, but concludes that mutual consent was implied through the parties' conduct such that DePuy's in-house counsel joint represented DePuy and the Hospital regarding their common interest in the 110 Patent Family. Accordingly, with the exception of the corrections noted above, the Court **DENIES** DePuy's motion for reconsideration. [Doc. No. 216]. The Court **LIFTS** the stay of production [Doc. No. 228] and **ORDERS** DePuy to provide complete responses to the Hospital's request for jointly privileged documents and testimony related to the prosecution of the 110 Patent Family applications by **December 15, 2016**.

In addition, the Court **DIRECTS** the Clerk to unseal its order dated August 1, 2016, as decided from the bench on September 29, 2016. [Doc. No. 213]. Having also **GRANTED** DePuy's motion to seal [Doc. No. 215] from the bench on September 29, 2016, the Court also **DIRECTS** the Clerk to maintain DePuy's Motion for Reconsideration of Portions of the Court's Order of August 1, 2016, under seal. [Doc. No. 216].

**SO ORDERED.**

Dated this 1st day of December, 2016.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United Stated Magistrate Judge