# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

DEPUY ORTHOPAEDICS, INC.,

    Plaintiff,

v.

ORTHOPAEDIC HOSPITAL,

    Defendant.

Case No.: 3:12-CV-299-JVB-MGG

## OPINION AND ORDER

This case involves contracts and patents regarding orthopaedic implants.

The Court referred this case to Magistrate Judge Michael G. Gotsch for a Report and Recommendation on:

1.     DePuy's motion for summary judgment regarding contract issues (DE 236);

2.     DePuy's motion for summary judgment regarding invalidity (Hamilton) (DE 241);

3.     DePuy's motion for summary judgment regarding invalidity (Li) (DE 243);

4.     DePuy's motion for summary judgment of non-infringement (DE 251);

5.     Hospital's request for oral argument (DE 303); and

6.     Hospital's motion to strike (DE 305).

After holding oral arguments, Judge Gotsch issued a thorough and well-reasoned Report and Recommendation (DE 366). He recommends:

1.     Denying without prejudice the Hospital's motions to strike (DEs 256 and 305) and allowing it to file related motions in limine later in anticipation of trial, as necessary;

2.     Denying DePuy's motions for summary judgment for invalidity (DEs 241 and 243);

3. Denying DePuy's motion for summary judgment of non-infringement (DE 251); and

4. Denying DePuy's motion for summary judgment on contract issues (DE 236).

DePuy objects to the recommendation for denial of its motion for summary judgment of non-infringement. (DE 371.) DePuy urges the Court to construe the "Thermal Treatment Limitation" as meaning "without exposing the implant to thermal treatments recognized as thermal treatments to extinguish free radicals, including temperatures above 25°C for more than two hours." DePuy argues that under that construction, its accused processes and products do not infringe.

**A.  Background**

Magistrate Judge Christopher A. Nuechterlein's Order following a *Markman* hearing details the background of this case. (DE 163 at 2–8.) Judge Gotsch's Report and Recommendation also presents a useful summary. (DE 366 at 1–7.)

As of 1999, orthopaedic implants caused problems. They deteriorated inside the body, releasing particles that damaged adjacent bone. So persons of ordinary skill in the art ("POSAs") began irradiating the implants to improve wear-resistance.

But radiation caused oxidation, which also deteriorated the implants. So POSAs started applying heat—thermal treatments, including re-melting (heating the implant above its melt temperature) and annealing (heating the implant below its melt temperature)—to improve oxidation-resistance of implants.

But thermal treatments still weakened the implants, so the Hospital (a California research hospital) researched the creation of oxidation-resistant implants without re-melting or annealing.

2

The Hospital and DePuy (an Indiana medical device manufacturer) wanted to work together to develop better technology and products related to orthopaedic implants. The parties entered into a Research Agreement and a Patent Rights and License Agreement ("PLRA") in 1999.

DePuy agreed to assume financial responsibility for prosecuting, maintaining, and enforcing related patent rights; to develop and market products using the new technology; and to pay royalties to the Hospital on sales using the new technology. The Hospital would retain ownership of any patents arising from the technology.

The collaboration produced five patents related to polyethylene orthopaedic implants ("the 110 Family"). These patents are all directed to a method for making wear-resistant and oxidation-resistant polyethylene orthopaedic implants without thermally treating them to extinguish free radicals. Each of these patents teaches a limitation the parties call the "Thermal Treatment Limitation."

But before any of the 110 Family Patents issued, DePuy started selling artificial knee systems made from a polyethylene product it manufactured called AOX. The Hospital concluded AOX used technology from the 110 Family, and told DePuy it owed royalties on AOX sales under the PLRA.

Lawsuits ensued.

As relevant here, DePuy's basic position is that AOX falls outside the Thermal Treatment Limitation, which is essential to the 110 Family Patents. The Thermal Treatment Limitation states: "without thermally treating the implant to extinguish free radicals . . . ." (*See, e.g.*, DE 147-1 at 12 ('710 Patent)). DePuy argues that under a proper construction, this term means

"without exposing the implant to thermal treatments recognized as thermal treatments to extinguish free radicals, including temperatures above 25°C for more than two hours." (DE 371 at 3.) DePuy argues that because AOX is heated above 25°C for more than two hours it is not covered by the 110 Family Patents and therefore does not infringe them.

**B.      Pending motions**

DePuy has six motions currently pending: four motions for summary judgment (DEs 236, 241, 243, and 251) and two *Daubert* motions (DEs 232 and 247).

The Hospital also has six motions currently pending: two motions to strike (DEs 256 and 305), three *Daubert* motions (DEs 257, 258, and 259), and one motion for a status/scheduling conference (DE 333).

The Court referred DePuy's four motions for summary judgment, the Hospital's request for oral argument (DE 303), and the Hospital's motion to strike to Judge Gotsch for a Report and Recommendation.

Judge Gotsch disposed of the motion for oral argument, held a hearing, and issued a Report and Recommendation. He recommends denying without prejudice the Hospital's motions to strike (DEs 256 and 305). He also recommends denying DePuy's motions for summary judgment (DEs 236, 241, 243, and 251).

DePuy objects to the recommendation for denial of its motion for summary judgment of non-infringement. (DE 371.) DePuy urges the Court to construe the "Thermal Treatment Limitation" in a particular way, and to conclude that AOX falls outside the patents and therefore does not infringe.

4

### C. Review of the Magistrate Judge's Report and Recommendation

A district court may refer dispositive matters to a magistrate judge, in which case the magistrate judge may submit to the district judge a report and recommended disposition, including any findings of fact. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1); *see also Schur v. L.A. Weight Loss Ctrs*, 577 F.3d 752, 760 (7th Cir. 2009).

The magistrate judge's recommendation on a dispositive matter is not a final order. The district judge makes the ultimate decision to "accept, reject, or modify" the findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see also Schur*, 577 F.3d at 760–61.

After a magistrate judge makes a report and recommendation, if a party raises specific objections to findings and recommendations, the district court must review those objections *de novo*, determining for itself whether the magistrate judge's decisions as to those issues are supported by substantial evidence or were the result of an error of law. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

The court may, however, defer to conclusions to which neither party objected. *Schur*, 577 F.3d at 760–61. If a party fails to object to a magistrate judge's report and recommendation, or objects to some issues but not others, the party waives appellate review of the issues to which the party has not objected. *Johnson*, 170 F.3d at 739.

**D.     DePuy's objection to the Report and Recommendation**

DePuy essentially raises only one big objection to the Report and Recommendation. DePuy objects to the recommendation that the Court deny its motion for summary judgment of non-infringement (DE 251). DePuy argues the Court should construe the Thermal Treatment Limitation as meaning "without exposing the implant to thermal treatments recognized as thermal treatments to extinguish free radicals, including temperatures above 25°C for more than two hours."

DePuy argues that under this construction, DePuy does not infringe the patents because the Hospital doesn't dispute that AOX was heated above 25°C for more than two hours. Finally, DePuy argues that granting its motion for summary judgment will dispose of all claims and counterclaims in this case.

Accordingly, the Court reviews this issue *de novo*.

**E.     DePuy's motion for summary judgment of non-infringement**

**(1)     *Summary judgment standard***

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence

of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**(2)** *Discussion*

DePuy seeks summary judgment that AOX is not covered by, and therefore does not infringe, any of the patent claims asserted by the Hospital, because AOX does not meet the Thermal Treatment Limitation asserted by the patents. (DE 251 at 1.)

Patent infringement analysis involves two steps: (1) determining the meaning and scope of the patent claim, and (2) comparing the properly construed claims to the accused process. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374 (1996) ("Victory in an infringement suit requires a finding that the patent claim covers the alleged infringer's product or process, which in turn necessitates a determination of what the words in the claim mean.") (internal quotations omitted). The first step—claim construction—is a matter of law for the court. *Id.* at 970–71.

To establish infringement, "every element and limitation of the claim must be present in the accused device, literally or by an equivalent." *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1357–58 (Fed. Cir. 2006). Literal infringement occurs when every limitation of a patent claim appears in the accused method; in other words, when the properly construed claim literally "reads on" the accused method. *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996).

Summary judgment regarding infringement "is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374–75 (Fed. Cir. 2007). Specifically, summary judgment of non-infringement is proper when the moving party shows that "no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002).

The Court already completed the first part of the analysis—the claim construction—regarding the Thermal Treatment Limitation. Judge Nuechterlein held a *Markman* hearing and issued an Order construing this term. DePuy disagrees with that construction, but has not moved for reconsideration of that construction. Instead, as the Hospital notes, DePuy essentially moves for summary judgment that AOX does not infringe the asserted claims on the basis of DePuy's construction of the Thermal Treatment Limitation, a construction Judge Nuechterlein specifically already rejected.

In short, the problem for DePuy is that it asks for summary judgment of non-infringement on the basis of a claim construction the Court already denied.

8

Each of the Hospital's asserted patent claims contains the Thermal Treatment Limitation. This is a negative limitation: "without thermally treating the implant to extinguish free radicals." (*See, e.g.*, DE 147-1 at 12 ('710 Patent)). DePuy argues AOX does not meet this limitation, and therefore is not covered by the Hospital's patents, because AOX products are heated at temperatures above 25°C for over two hours, and are then maintained for weeks or months at room temperature. (DE 252 at 5.)

DePuy acknowledges Judge Nuechterlein held a *Markman* hearing and issued an Order regarding the Thermal Treatment Limitation. He ruled on January 8, 2016, that "the plain and ordinary meaning of the Term will apply in this litigation going forward." (DE 163 at 33.)

But DePuy argues that Judge Nuechterlein ruled that thermal treatments at 25°C or higher for two hours or longer ("25+2") exceed the scope of the Thermal Treatment Limitation, and that he left open the possibility that thermal treatments at lower temperatures for shorter durations also might exceed the scope of that term.

The problem is that's not what the *Markman* Order says.

Judge Nuechterlein ruled that DePuy had not carried its burden to show that the Thermal Treatment Limitation was indefinite. (DE 163 at 31.) Then he noted that "the Hospital would likely agree that generally speaking thermal treatments at 25°C or higher for two hours or more would be outside the scope of the Term." (DE 163 at 32.) He left open the possibility that thermal treatments of less than 25+2 could exceed the scope of the term. But he also left open the possibility that thermal treatments equal to or greater than 25+2 could be within the scope of the term. The phrase "generally speaking" admits exceptions.

9

The reason Judge Nuechterlein did not nail the term to a specific temperature and temporal minimum threshold is that the term, by its express, plain language, includes an additional factor: "to extinguish free radicals."

As the Hospital acknowledges, "depending on a myriad of variables," heat treatment of 25+2 might extinguish free radicals by more than a trivial amount, but that doesn't mean every heat treatment within that range extinguishes free radicals by more than a trivial amount. (DE 296 at 12–13.)

Judge Nuechterlein concluded that POSAs understood the plain and ordinary meaning of the term, so he ruled that the plain and ordinary meaning would apply.

DePuy claims Judge Gotsch contradicted his predecessor by opining in the Report and Recommendation that "the fact that AOX is exposed to temperatures above 25°C for two hours or more is not enough to show non-infringement" because other factors must be considered. (DE 371 at 6, quoting DE 366 at 43–44.)

But there is no contradiction.

Judge Nuechterlein opined that a mere showing of 25+2 was insufficient to establish exclusion from the scope of the patents because the Thermal Treatment Limitation "defines the excluded thermal treatments based on how they extinguish free radicals, not based strictly on temperature and duration." (DE 163 at 32.) And Judge Gotsch likewise noted that "the fact that AOX is exposed to temperatures above 25°C for two hours or more is not enough to show non-infringement." (DE 366 at 44.)

DePuy also claims Judge Gotsch did not explain with specificity what the other factors might be. But this claim also lacks merit. Judge Gotsch explained that his predecessor explained

10

what the term itself already explained: whether the thermal treatment extinguishes free radicals is a relevant factor in determining whether the thermal treatment is within the scope of the Thermal Treatment Limitation.

DePuy proceeds to claim the two Magistrate Judges reached diametrically opposed conclusions regarding what the Thermal Treatment Limitation means. (DE 371 at 7.) As already demonstrated, however, this is incorrect. DePuy claims Judge Nuechterlein "concluded that 'thermal treatments at 25°C or higher for two hours or more would be outside the scope of the Term,' Dkt. No. 163 at 32 . . . ." (DE 371 at 7, quoting DE 163 at 32.) But DePuy quotes the Order out of context. As already noted, Judge Nuechterlein actually wrote that "the Hospital would likely agree that generally speaking thermal treatments at 25°C or higher for two hours or more would be outside the scope of the Term." (DE 163 at 32.) Contrary to DePuy's assertion, this is not a conclusion by Judge Nuechterlein that 25+2 is unequivocally beyond the scope of the patents.

Saying "the Hospital would likely agree that generally speaking X is true" is not the same as saying "the Court concludes that X is always, unequivocally, ineluctably true."

After a *de novo* review, the Court agrees with the Report and Recommendation that the record "is replete with competing evidence," and that genuine issues of material fact regarding whether AOX meets the Thermal Treatment Limitation preclude summary judgment for non-infringement. Construing the facts in the light most favorable to the non-moving party, and drawing all legitimate inferences in its favor, the Court cannot say DePuy is entitled to judgment of non-infringement as a matter of law.

The Court **DENIES** DePuy's motion for summary judgment of non-infringement (DE 251).

**F.    Remainder of the Report and Recommendation**

DePuy did not object to the remainder of the Report and Recommendation. The Court thoroughly reviewed the entire Report and Recommendation, and agrees with its conclusions and adopts its recommendations.

Accordingly, the Court:

1. **DENIES WITHOUT PREJUDICE** the Hospital's motions to strike (DEs 256 and 305) and allows the Hospital to file related motions in limine later in anticipation of trial, as necessary;

2. **DENIES** DePuy's motions for summary judgment for invalidity (DEs 241 and 243); and

3. **DENIES** DePuy's motion for summary judgment on contract issues (DE 236).

**G.    Other pending motions**

DePuy also has two *Daubert* motions pending (DEs 232 and 247) and the Hospital has three *Daubert* motions pending (DEs 257, 258, 259). Given this Order, the Court **DENIES** these motions **WITHOUT PREJUDICE**. If, in light of this Order, either party wants to maintain one or more of its *Daubert* motions, it may either simply re-file them, or may re-file them with additions or subtractions in light of this Order. Then, the opposing party will have the customary time to respond, and may respond either by simply re-filing its prior response, or by re-filing it with additions or subtractions as appropriate. Then, the moving party will have the customary time to reply, in similar fashion.

The Court also denies the Hospital's motion for a status conference (DE 333).

**H.     Conclusion**

The Court:

1. **DENIES WITHOUT PREJUDICE** the Hospital's motions to strike (DEs 256 and 305) and allows the Hospital to file related motions in limine later in anticipation of trial, as necessary;

2. **DENIES** DePuy's motions for summary judgment (DEs 236, 241, 243, and 251);

3. **DENIES WITHOUT PREJUDICE** DePuy's *Daubert* motions (DEs 232 and 247) and the Hospital's *Daubert* motions (DEs 257, 258, and 259);

4. **DENIES** the Hospital's motion for a status conference (DE 333); and

5. **ADOPTS** the Report and Recommendation (DE 366).

**SO ORDERED** on August 31, 2017.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT COURT